

CLERK'S OFFICE
A TRUE COPY
Jun 30, 2022
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of <br> *(Briefly describe the property to be searched or identify the person by name and address)* <br><br> A black refurbished iPhone, assigned call number 414-704-7204, in custody of the SFPD, as further described in Attachment A. | ) ) ) ) ) )    Case No.    22    MJ    129 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the    Eastern    District of    Wisconsin   , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 2113(a); 2113(d) & (2)(a) | Armed Bank Robbery. |

The application is based on these facts:

See Attached Affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

FBI SA Heather Wright
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

       telephone        *(specify reliable electronic means).*

Date:    6/30/2022

_____
*Judge's signature*

City and state:    Milwaukee, Wisconsin      Honorable William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

<u>**AFFIDAVIT IN SUPPORT OF**</u>
<u>**AN APPLICATION FOR A SEACH WARRANT**</u>

I, Heather N. Wright, being first duly sworn on oath, on information and belief state:

**I.      INTRODUCTION, BACKGROUND, TRAINING, AND EXPERIENCE:**

1.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since July of 2010. Since August of 2020, I have been assigned to the FBI's Milwaukee Area Violent Crimes Task Force, a multi-jurisdictional law enforcement entity charged with investigating violations of federal law, including bank robberies, commercial robberies, armed motor vehicle robberies, illegal possession of firearms, other violent crimes, as well as drug trafficking. I have been trained in a variety of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause. I have participated in criminal investigations, surveillance, search warrants, interviews, and debriefs of arrested subjects. As a result of this training and investigative experience, I have learned how and why violent actors and drug traffickers typically conduct various aspects of their criminal activities.

2.      Based upon my training and experience, I know that computer hardware and software may be important to a criminal investigation in two distinct and important respects: (1) the objects themselves may be instrumentalities, fruits, or evidence of crime, and/or (2) the objects may have been used to collect and store information about crimes (in the form of electronic data). Rule 41 of the Federal Rules of Criminal Procedure permits the government to search and seize computer hardware and software which are (1) instrumentalities, fruits, or evidence of crime, or (2) storage devices for information about crime.

3.      To this end, based upon my training and experience, I know that individuals involved in violent crimes use cellular telephones to maintain contact with co-conspirators aurally

or via electronic message in "text" format. I also know that it is common for suspects who commit violent crimes to take, or cause to be taken, photographs and other visual depictions of themselves, their associates, and the illegal proceeds and firearms that they control or possess.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that on or about March 28, 2022, and on or about May 6, 2022, ROLANDO RODRIGUEZ (DOB: 01/02/1994) and others committed Bank Robberies in the City of Saint Francis, Wisconsin. These offenses are in violation of Title 18, United States Code, Sections 2113(a), 2113(d), and 2(a).

5.      I also submit that there is probable cause to believe that the cellular telephone recovered by the Hales Corners Police Department (HCPD) during the transport of RODRIGUEZ to the hospital and in the custody of the Saint Francis Police Department (SFPD) contains evidence of the above-described crime.

6.      Since the cellular telephone was seized on June 22, 2022, the device was securely maintained by Detective Heckman of the HCPD and was transferred to the custody of the SFPD five hours later. Since the cellular phone was transferred to the custody of SFPD, the cellular telephone has been securely maintained within the custody of the SFPD.

7.      This affidavit is based upon my personal knowledge, my training and experience, and on information reported to me by other state and local law enforcement officers during their official duties, all of whom I believe to be truthful and reliable. This affidavit is also based upon police reports, physical surveillance, and witness statements that I consider to be reliable as set forth herein. The facts of this Affidavit are based upon information obtained from my investigation, as well as information I have received from other law enforcement officers and confidential sources.

8. Because this affidavit is submitted for the limited purpose of a obtaining a search warrant, I have not included each and every fact known to me concerning this investigation. I have attempted to set forth only the facts that I believe are pertinent to establishing the necessary foundation for the warrant.

## II. IDENTIFICATION OF THE DEVICE TO BE EXAMINED

9. This affidavit is submitted in support of an application for a search warrant for the following portable electronic device ("the Device"), which is currently in the custody of the SFPD, for evidence of RODRIGUEZ's involvement in the above-described crimes:

   a. a black refurbished iPhone (remanufactured by Asurion) with a phone number of 414-704-7204.

10. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## III. PROBABLE CAUSE

11. On March 28, 2022, at about 9:06 a.m., St. Francis Police Department (SFPD) Officers responded to the PNC Bank, located at 3545 S. Kinnickinnic Ave., St. Francis, Wisconsin, for a report of an armed robbery. The PNC Bank is a federally insured financial instituation. Upon arrival, officers learned that the subject, described as a white or Hispanic male, approximately 5'7" to 5'10" tall, thin build, wearing a gray hooded jacket with two large pockets on the front, a black knit winter cap, a black neoprene face mask, dark colored pants, gray tennis shoes, and gray gloves, entered the PNC bank, threw a black backpack with neon pink accents onto the counter and demanded money or he would shoot the teller. The weapon, although implied, was never brandished. The subject demanded that the teller retrieve money from the second and third "vault" indicating that the subject was familiar with the fact that the teller had multiple drawers with

ascending values inside. The offender fled on foot northbound from the bank to an alley. Based on surveillance footage, the subject was observed being dropped off prior to the robbery, in the 2200 block of East Morgan Avenue, by a white Nissan Altima with heavy tint, hereinafter, the "Subject Vehicle", and walked to the bank on foot. Following the robbery, the Nissan was observed getting onto Interstate 794 northbound at approximately 9:06 a.m.

12.　　Interviews of two tellers were conducted. Teller one, hereinafter J.A., stated that the bank had just opened and that the suspect approached the window, put the black backpack with pink details on the counter and demanded J.A. give him money in "ten seconds" or he "would start shooting." J.A. further stated that the suspect told him he was not going fast enough and the suspect was going to shoot him. J.A. believed that the suspect had a gun based on the suspect's statements.

13.　　The second teller, hereinafter K.L., stated that s/he could hear the threats the suspect made about shooting people, so K.L. quickly emptied their teller drawer and handed the suspect the money over the counter. K.L. and J.A. both stated they feared for their lives. The suspect stole approximately $7,600 in U.S. currency.

14.　　Officers recovered surveillance video from a neighboring home's exterior surveillance system and observed a white vehicle, with dark tinted windows and rims, drop off a slender male subject in the 2200 block of E. Morgan Ave., in the City of Milwaukee. This location is about one block north of the PNC Bank. The subject was wearing a gray coat with hood up and dark pants and he walked eastbound after being dropped off on that block at about 8:58 a.m. This clothing matched the subject's clothing observed in the PNC Bank surveillance footage. Additional footage recovered from the same home surveillance system showed the offender a few minutes later coming back from the direction of the bank and running westbound down E. Morgan Ave. The subject was observed carrying the black/neon pink backpack that he presented inside the bank.

15.     While canvasing the area, SFPD Captain Blunt spoke with a crew working on the corner of E. Morgan Ave. / S. Ellen Street. The crew stated that they had observed a white sedan with dark tinted windows leave the area at a high speed at about the same time officers were responding to the bank.

16.     Based on the surveillance video, it was determined that the vehicle was a white 2016-2019 Nissan Altima. The Department of Transportation (DOT) was able to track the vehicle entering Interstate 794 at E. Oklahoma Ave. at about 9:06 a.m. and exit the freeway at I43/W. North Ave. The Nissan went westbound from the freeway onto W. North Ave. approximately six minutes later.

17.     Based on the information gathered, additional neighborhood surveillance footage was obtained and additional photos provided by DOT. A detailed description of the Subject Vehicle was provided to neighboring law enforcement agencies: A white 2016-2019 Nissan Altima, with heavy tinted windows (including windshield), front passenger side damage, two different colored exterior mirrors (one white, one black), and black wheels without hubcaps. There also appeared to be a front and rear plate on the vehicle. A few hours following the robbery on March 28, 2022, at about 2:30 p.m., Milwaukee County DA Investigator Steven Strasser located the Subject Vehicle, a white, Nissan Altima, WI plate ALR9482, parked in the 2500 block of N. 10th Street, in the City of Milwaukee. The vehicle's registration listed to a residence at 2402 N. 9th Street. Officers on scene confirmed that the unique features listed above matched this vehicle. This Nissan was parked about 0.6 miles from where DOT last observed the vehicle on camera. DOT confirmed the plate, ALR9482, listed to a white 2016 Nissan Altima, VIN# 1N4AL3AP6GN349580. The registered owner was MEKHI Q. DANIELS with a date of birth of 08/29/2002. At about 4:35 p.m., the Nissan was towed back to the SFPD and secured as evidence.

18.     On March 29, 2022, SFPD executed a search warrant, signed by Milwaukee County Court Commissioner Barry Phillips, on the Nissan. Numerous items identifying DANIELS as a frequent occupant of the vehicle, including a T-MOBILE receipt with DANIELS' name on it for the purchase of minutes for cellular phone number 414-739-8623, were located inside the vehicle. Open source law enforcement resources indicated this number was associated with DANIELS. A warrant for subscriber information, was authorized Milwaukee County Circuit Court Judge Mark Sanders on April 5, 2022, and the information requested per the warrant was returned by T-MOBILE on April 14, 2022. The return indicated that the number was not assigned to an identified subscriber and indicated that the phone was not active at the time of the March 28, 2022 bank robbery.

19.     In addition, law enforcement recovered a case for a .40 caliber Glock 27 hand gun inside the vehicle.

20.     Also, officers recovered a receipt from the McDonald's restaurant located at 1135 N. Shawano St., in New London, Wisconsin dated March 27, 2022 at 5:42 p.m.. This is less than 16 hours prior to the PNC armed bank robbery. SFPD Detective Holly McManus contacted the manager of the McDonalds and obtained video footage of the timeframe. In the footage, DANIELS is observed operating the same 2016 Nissan.

21.     On the afternoon of March 29, 2022, Detective McManus conducted another query of the Nissan's registration ALR9482 and learned that the vehicle had been reported stolen on March 29, 2022, at approximately 11:00 a.m. to the Milwaukee Police Department (MPD). Per the MPD report, on March 29, 2022, at about 9:00 p.m., DANIELS walked into MPD Fifth District police station and reported his vehicle stolen. DANIELS reported that he had parked the vehicle in the 1000 block of W. North Avenue at 11:00 p.m. on March 27, 2022 (the night prior to the

bank robbery). DANIELS stated that he had not driven his vehicle since, "because something was wrong with it."

22.     When initially reporting his vehicle stolen, DANIELS provided dispatch a phone number of 262-321-4536, so that an officer could contact him regarding his Nissan. This is a VERIZON phone number and lists to a female subject. On March 29, 2022, Investigator Strasser contacted DANIELS to conduct follow-up on DANIELS' stolen vehicle report. Investigator STRASSER called 262-321-4536, and a subject who identified himself as DANIELS answered. DANIELS asked Investigator STRASSER to delete this phone number from the report. DANIELS stated that the phone number was associated to his girlfriend and told Investigator Strasser that he knew he had a warrant, so he gave his girlfriend's number in an attempt to avoid arrest. DANIELS provided Investigator Strasser with the telephone number 414-301-0531 as his primary contact number. This number's provider is T-MOBILE. During this conversation with Investigator Strasser, DANIELS told him the only way to start his Nissan is with the key FOB, and he was in possession of that FOB. DANIELS believed it was stolen with a flatbed tow truck.

23.     On March 31, 2022, Investigator Strasser made phone contact with DANIELS utilizing the number (414) 301-0531. During this conversation, DANIELS told Investigator Strasser that there were two key FOBS associated with the Subject Vehicle and that he knew where they both were. When asked, DANIELS confirmed that nobody drives his car but him, and the last time someone drove his vehicle was about a month ago, and that person was now deceased. DANIELS then stated that there had been a phone inside the vehicle's center console when it was stolen, DANIELS stated that he had tried to track the phone but it had been shut off. DANIELS stated that the number assigned to the phone inside the vehicle was 262-321-4536. DANIELS told Investigator Strasser that the phones with telephone numbers 262-321-4536 and (414) 301-0531

were "tethered" together through his Apple account (call-forwarding) which was the reason he was able to answer the call by Investigator Strasser the previous day. DANIELS also explained that he frequently parked his vehicle away from his home so people wouldn't know he was home. DANIELS indicated that his house had been "shot up" earlier in the year. Also, during this conversation, DANIELS explained distinctive features about his Nissan: front end damage and black rims. He also stated there was an Infinity transmission and engine in it.

24.     While conducting a canvas of the area that the Nissan was located (2500 N 10th St), SFPD Officer Jeremy Harcus obtained surveillance footage from a residence that showed that on March 28, 2022, at approximately 1:30 p.m. (approximately 4 ½ hours after the robbery), the Nissan pulled up to the location where it had been located on March 29, 2022. A single occupant is observed getting out of the vehicle and getting into a white Ford Expedition. That Ford Expedition has been identified as bearing Milwaukee Bucks license plate 10892MB. The Department of Transportation listed that vehicle to Taniesha Daniels, of 2402 N. 9th Street, Milwaukee (DANIELS' residence).

25.     In addition to the information requested in the T-MOBILE warrant submitted for 262-739-8623 on April 5, 2022, Detective McManus also requested subscriber information, call detail records, text message connection records, text message content information, specialized location records and cloud storage records, for the timeframe of 12:00 a.m. (CST) on March 4, 2022, through 11:59 p.m. (CST) on April 4, 2022, for (414) 301-0531. T-MOBILE provided results on April 14, 2022. T-MOBILE provided an activation date of March 30, 2022, and confirmed that the number was not active during the March 28, 2022 PNC Bank robbery.

26.     On April 21, 2022, SFPD Detective McManus obtained a state search warrant for subscriber information, call detail records, text message connection records, text message content

information, specialized location records and cloud storage records, for the timeframe of 12:00 a.m. (CST) on March 4, 2022, through 11:59 p.m. (CST) on April 4, 2022, for the telephone number 262-321-4536, a number provided by VERIZON. The search warrant was signed and granted by Milwaukee County Circuit Judge Michael Hanrahan on April 21, 2022. The results of that warrant were received from VERIZON on May 16, 2022. After an analysis of the data was conducted, it indicated that on March 28, 2022, at approximately 7:56 a.m., the device associated with 262-321-4536 left the area of DANIELS's residence (2402 N. 9th Street, Milwaukee, Wisconsin), and traveled to an area near a cell tower location on 54th and Fond du Lac Avenue. The device remained at the location until approximately 8:29 a.m. The device did not have any activity again until approximately 10:10 a.m. The device then pinged off a cell tower near the area of 49th and Lisbon Avenue, which encompassed the Clark Gas Station. DANIELS later stated in an interview that DANIELS frequently met the bank robbery subject at this location.

27.     On May 6, 2022, at approximately 5:03 p.m., SFPD Officers responded, again, to the PNC Bank, located at 3545 S. Kinnickinnic Ave., St. Francis, Wisconsin, for a report of an armed robbery. Upon arrival, officers learned that a subject, described as approximately 5'5" tall, Hispanic male, wearing a black Puma sweatshirt with a synched hood, a black mask, big eyes, wearing gloves, had robbed them with an implied weapon. The subject stole approximately $1552 in U.S. currency.

28.     A victim teller, hereinafter T.D., stated that s/he had just finished balancing his/her drawer when s/he heard commotion over by the west entrance. The subject approached the teller window and stated something to the effect of "give me all the money and no one gets hurt." T.D. stated that s/he opened the drawer and began to pull the money out. T.D stated that the subject was "counting down from 10", that s/he was moving too slow, and that the subject wanted "big bills."

T.D. stated that s/he feared for their safety and thought the subject was going to begin to shoot. T.D. began to back away from the drawer and walk towards the vault to get larger bills, however, the subject then reached through the teller window and grabbed the drawer. When T.D. returned from the vault, the subject was no longer at the window.

29.     The second victim, hereinafter J.A., stated that s/he was a lead teller and two days away from leaving the business. J.A. stated that s/he was the victim of a prior armed robbery at the same PNC on March 28, 2022. J.A. stated that s/he was one hundred percent sure that the subject was the same person who robbed the PNC Bank in March of 2022. J.A. stated that the subject's voice and eyes were identical to that of the subject from the March 2022 bank robbery. J.A. stated that the subject walked through the bank doors just as J.A. was walking towards the doors to lock the bank. J.A. stated that the subject entered the bank and walked by J.A. on his way to the teller line and stated, "You know what it is. I'm back." J.A. stated that the subject's comment further made her/him believe that the subject was the same individual as the subject in the March 2022 robbery.  J.A. stated that the subject made his way to teller T.D. carrying a gray plastic grocery bag, where he confronted T.D. for money. J.A stated that the subject told T.D., "I'm gonna count to ten, then I'm gonna start shooting." J.A. stated that the subject of the robbery in March said something similar. J.A. stated that the subject eventually reached through the teller window and grabbed the drawer. As the subject pulled the drawer over the teller wall, he hit the protective plexiglass and spilled large sums of money on the ground in front of the teller line. J.A stated that the subject struggled, as he attempted to pick up the money from the ground. J.A stated that the subject collected some of the money on the ground and fled from the bank with the entire drawer in his possession. J.A stated that once the subject walked out of the bank, some of the cash blew out of the drawer from the wind. J.A stated that he observed the subject run northbound through

the bank parking lot, enter the rear driver's side door of a vehicle parked on the north side of E. Eden Place. J.A. described the vehicle, hereinafter Suspect Vehicle 2, as a gray sedan with tinted windows.

30.     SFPD Officers were able to obtain surveillance footage from the bank as well as a from a neighboring home's exterior surveillance footage. The video footage observed from the residential surveillance showed Suspect Vehicle 2 driving northbound on S. Ellen Street at a high rate of speed. A still shot from the video footage showed a grey Mercedes Benz sedan with no plate and heavily tinted windows. PNC Bank surveillance footage showed a male subject, thin to medium build, wearing white/gray tennis shoes, jeans with rips/holes down length of leg, white undershirt, black hooded sweatshirt with "PUMA" written in white lettering across the chest, black gloves, and a black facemask. At 16:58:57 hours, a gray Mercedes Benz sedan is observed exiting the alleyway onto E. Eden Place and at 16:59:08 hours, the Mercedes Benz sedan parks on the north side of W. Eden Place in front of 2308 E. Eden Place, facing West. At 16:59:30 hours, the subject can be seen walking towards the bank from the parked vehicle and at 17:00:03 hours, the subject enters the bank via the west entrance. At 17:00:03 hours, the subject grabs the teller drawer and at 17:01:09 hours, the subject exits the bank with the teller drawer in hand. At 17:01:29 hours, the subject enters the parked Mercedes Benz sedan and at 17:01:32 hours, the Mercedes Benz sedan flees westbound in the 2300 block of E. Eden Place.

31.     A detailed description of the Subject Vehicle 2 was provided to neighboring law enforcement agencies and it was determined that on May 5, 2022, a silver 2016 Mercedes Benz C300 sedan (WI plate AAL-6371) with heavily tinted windows was reported stolen from 3200 S. 27th Street.

32.     On May 10, 2022, at approximately 12:00 p.m., MPD officers were dispatched to the area of the 2200 block of E. Vollmer Avenue, Milwaukee, Wisconsin, in regards to a citizen locating a bank teller drawer. The drawer was located in the terrace in front of 2240 E. Vollmer Avenue directly next to the alley entrance. SFPD Detective Gilden responded and identified a witness, hereinafter P.K., who stated that they witnessed Suspect Vehicle 2 in the area on May 5, 2022. P.K. stated that on May 6, 2022, at approximately 5:00 p.m., P.K. was sitting on the porch, which faces north, and heard a vehicle traveling at a high rate of speed in the alley across the street (alley between Vollmer Avenue and Holt Avenue). P.K. stated that they observed the vehicle exit the alleyway onto Vollmer Avenue, which was in direct view of the porch. P.K. described the vehicle as a gray sedan. P.K. further stated that the vehicle turned eastbound onto Vollmer Avenue and then violated the stop sign as it went northbound onto Kinnickinnic Avenue. P.K. stated that when the vehicle was exiting the alleyway, it sounded like something was being dragged under the car. P.K. stated that they observed the tan, plastic drawer slide and come to a rest near the alleyway exit. A photo of Suspect vehicle 2 was shown to P.K. and P.K. confirmed that this was indeed the vehicle they had observed drive out of the alley and leave the drawer behind. The drawer as well as a gray plastic grocery bag were submitted to the Wisconsin State Crime Lab for Processing.

33.     Based on the aforementioned information, on May 11, 2022, at approximately 12:27 p.m., DANIELS was taken into custody and arrested for Robbery of a Financial Institution-Party to a Crime, in violation of Wisconsin State Statute § 943.87, by SFPD, assisted by the FBI Milwaukee Area Violent Crimes Task Force. Located inside Subject Vehicle 1, which was being operated by DANIELS prior to his arrest, was a blue iPhone 13 Max Pro. DANIELS told law enforcement that the phone was located inside the vehicle, inside a Gucci case, and had the

telephone number 262-321-4536. Law enforcement also located a loaded 9mm Glock 19 handgun, with an extended magazine, in the glovebox of the vehicle.

34.     During the mirandized interview of DANIELS, DANIELS agreed to let SFPD Detective Gilden look through his phone and was able to unlock the phone using facial recognition. While looking through DANIELS' phone, Detective Gilden observed numerous text messages referencing firearms as well as "switches." Based upon my training and experience, I know the term "switch" to reference a device that can be placed on a semi-automatic firearm to make it function as an automatic weapon. DANIELS was questioned about the bank robbery on March 28, 2022 due to DANIELS' vehicle being identified as the vehicle the bank robbery suspect arrived and departed in. DANIELS was shown surveillance footage of the vehicle and identified his vehicle as the vehicle used in the robbery, however, DANIELS denied being involved in the robbery. DANIELS was shown surveillance photos of the robbery suspect and identified the suspect as ROLANDO RODRIGUEZ, DOB: 01/12/1994. DANIELS stated that RODRIGUEZ was a drug user to whom DANIELS had previously provided marijuana on a number of occasions. DANIELS stated that, on the day of the robbery, RODRIGUEZ kept calling DANIELS requesting to meet. DANIELS stated that RODRIGUEZ, along with a white, middle eastern looking, male, was dropped off near DANIELS's residence, in the area of 9th and Meinike Avenue, by a white/silver Honda Civic, driven by a white female. DANIELS stated that he entered the driver's seat of his vehicle, RODRIGUEZ entered the passenger seat, and the unknown male entered the rear passenger seat. DANIELS stated that RODRIGUEZ, armed with a handgun, demanded the key to DANIELS' vehicle and his wallet. DANIELS stated that, in fearing for his safety, he followed RODRIGUEZ's instructions, and exited the vehicle. DANIELS stated that RODRIGUEZ then entered the driver's seat of the vehicle and drove away. DANIELS stated that when he exited

the vehicle, he left his cellular phone inside the vehicle. DANIELS reported that his telephone number on the day of the bank robbery was (414) 897-2218. DANIELS stated that approximately one hour later, RODRIGUEZ returned the vehicle and parked it in the same location. Shortly after the robbery, DANIELS destroyed the physical cellular phone associated with the telephone number (414) 897-2218 and purchased a new cellular phone with the telephone number (414) 301-0531. DANIELS stated that he was aware that RODRIGUEZ had previously robbed a bank and had just been released from prison. In a subsequent interview of DANIELS, DANIELS admitted to police that he knew that RODRIGUEZ had most likely robbed a bank with his vehicle; however, DANIELS reiterated that he did not have anything to do with the robbery on March 28, 2022. DANIELS stated that he did not want to provide consent for his cellular phone because the phone contained information that would "get a lot of people in trouble."

35.    On May 12, 2022, an NCIC check of RODRIGUEZ was conducted. Your affiant reviewed the results and verified that RODRIGUEZ had been been federally convicted of bank robbery on September 19, 2013. RODRIGUEZ was sentenced to 102 months in prison and 5 years of supervised release. At that time, RODRIGUEZ also had an active outstanding warrant through the United States Marshal's Service for a probation violation as well as an outstanding warrant from Waukesha County Circuit Court for a probation violation. Your affiant reached out to RODRIGUEZ's federal Probation Officer Megan Cleveland. PO Cleveland confirmed RODRIGUEZ's active warrant and provided a telephone number of **414-704-7204** as the telephone number RODRIGUEZ had been using since the start of his supervised release.

36.    On June 6, 2022, Detective GILDEN (SFPD) received a DNA databank alert from the State Crime Lab-Madison office, in regards to the DNA sample (identified as "A2") collected from the gray plastic grocery bag left behind at the second bank robbery on May 6, 2022. SFPD

Sample A2 was linked to West Allis Police Department's case number #09-010062, which was a burglary to a jewelry store in their jurisdiction. West Allis PD's sample, which was blood evidence identified as "A1a," had a CODIS "hit" to ROLANDO R. RODRIGUEZ. At the time of this affidavit, we have not determined if a buccal swab standard was collected from RODRIGUEZ to confirm their CODIS hit. There was a second profile identified on the grocery bag of a female: E.D. Records confirm that E.D. (maiden name) is now E.S. DOT listed E.S.'s address as 61XX N. 37th Street, in Milwaukee.

37. On June 7, 2022, a state search warrant was obtained and signed by Milwaukee County Circuit Court Commisioner Barry Phillips for 2403 N 55th Street, in Milwaukee, an address associated with RODRIGUEZ. This residence was provided by RODRIGUEZ's federal probation agent as one of two addresses at which RODRIGUEZ stays as well as RODRIGUEZ's mother's address. On June 8, 2022, the MAVCTF, along with the South Shore Joint Tactical Unit (SSJTU), executed a search warrant at 2403 N. 55th Street, in Milwaukee. At the time, members of RODRIGUEZ's family were at the residence; however, RODRIGUEZ was not located. A search for items related to the bank robbery was conducted. Numerous articles of clothing relevant to both PNC robberies, including but not limited to a black backpack with neon pink accents, athletic shoes, a light gray jacket, and a red hooded sweatshirt. A key fob for a Mercedes and a credit card belonging to the owner of the stolen Mercedes were also located. A jacket was also located that was believed to be the jacket worn by RODRIGUEZ during the theft of the Mercedes on May 5, 2022.

38. On June 22, 2022, at approximately 7:00 a.m., HCPD responded to a health and wellness call regarding a subject passed out near the address of 52XX S. 11th Street, Hales Corners, Wisconsin. Upon arrival, Officers located an unresponsive male in the yard of the caller address.

Officers attempted life saving measures (i.e., Narcan) and the male was transported to St. Lukes Medical Center where he was stabalized. In an attempt to identify the unidentified male, officers retrieved the unidentified male's property which included U.S. Currency and a black refurbished iPhone.

39.     Once at the hospital, HCPD Detective Heckman, who had custody of the unidentified male's phone, noted that an individual called the unidentified male's phone. Detective Heckman answered the call. A female answered, hereinafter B.W., and indicated that she was a friend of the unidentified male and told the detective that she had been calling the telephone number **414-704-2704** in order to get a hold of him. B.W. provided Detective Heckman with a false name for the unidentified male. Detective Heckman told the female that the male was at the St. Luke's Medical Center and the female stated that she would be heading to the hospital in order to check on her friend. Detective Heckman, using open source database checks, queried the telephone number **414-704-2704** and identified ROLANDO RODRIGUEZ as associated to the number. Detective Heckman then called the number **414-704-2704** in order to verify the telephone number and identification of RODRIGUEZ. The unidentified male's phone rang, confirming that the individual was indeed RODRIGUEZ.

40.     When B.M. arrived, she arrived with another female, hereinafter M.M.. B.W and M.M. both continued to provide Detective Heckman with a false name. B.W. and M.M. eventually admitted that the unidentified male was RODRIGUEZ and that they had lied about his name because they knew that he had an outstanding warrant.

41.     On June 22, 2022, at approximately 12:00 p.m., SFPD Detecive Holly McManus responded to St. Luke's Medical Center. Detective McManus then took custody of

RODRIGUEZ's cell phone, a black refurbished iPhone (remanufactured by Asurion) with a phone number of 414-704-7204.

42.　　I am requesting a search warrant to obtain any and all information and communications stored in RODRIGUEZ's phone. The information contained within the phone will be able to corroborate DANIELS' statement, if he, indeed, was not a participant in the bank robberies believed to be committed by RODRIGUEZ. The information will also be able to assist investigators in determining RODRIGUEZ's involvement as well as any additional individuals associated with the crimes I have referred to in this affidavit.

## IV.　TECHNICAL TERMS

43.　　Based on my training and experience, I use the following technical terms to convey the following meanings:

    a.　Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

    b.　Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records of the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

44. Based on my knowledge, training, and experience, as well as my conversations with other Special Agents of the Federal Bureau of Investigation, who are experienced with electronic

communication systems, I know that the electronic Devices described above have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## V.    ELECTRONIC STORAGE AND FORENSIC ANALYSIS

45.    Based on my knowledge, training, and experience, as well as my conversations with other Special Agents of the Federal Bureau of Investigation, who are experienced with electronic communication systems, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the Devices.  This information can sometimes be recovered with forensics tools.

46.    Forensic evidence.  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of use, who used it, and when.

47.    Nature of examination.  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to, computer-assisted scans of the entire medium that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

48.    Manner of execution.  Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## VI.    CONCLUSION

49.    Based on the facts contained within this affidavit, I believe that probable cause exists to search the Device, which is more particularly described in Attachment A, and which is currently in the custody of the SFPD, for evidence of violations of Title 18, United States Code, Sections 2113(a), 2113(d), and 2(a) as set forth in Attachment B.

**<u>ATTACHMENT A</u>**
*Property to Be Searched*

The property to be searched is:

    a.  a black refurbished iPhone (remanufactured by Asurion) with assigned phone number of 414-704-7204, currently in evidence at the St. Francis Police Department.

# ATTACHMENT B
## Particular Things to be Seized

1.    All records on the Device described in Attachment A that relate to violations of Title 18, United States Code, Sections 2113(a), 2113(d), and 2(a), including but not limited to the following:

> a.   any information related to possession or sale of firearms and/or ammunition (including photographs, text messages, emails, or any other communication information);

> b.   any information recording any targets' schedule or travel in March and May 2022;

> c.   any web search information related to the offense described above;

> d.   photographs of locations evidencing pre-robbery surveillance or vehicles or people related to the offense described above;

> e.   any communications via text messages, email, Facebook, Twitter, or other web-based applications between the subjects and others regarding the offense described above and any communications regarding illegal activities among and between members and associates involved in drug trafficking or firearms possession or sale; and

> f.   all bank records, checks, credit card bills, account information, and other financial records.

> g.   Records of Internet Protocol addresses used; records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user typed web addresses.

2.    Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3.    As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored,

including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.